## T. B. CALDWELL V. DUTTON & RUTHERFORD.

Decided January 28, 1899.

**1.  Practice on Appeal—Request for Findings Below.**

An assignment of error based upon the failure of the trial court to find certain facts will not be considered on appeal where no request for findings was made.

**2.  Rescission for Fraud Must Be Entire.**

A purchaser can not have the contract of sale set aside in part to relieve himself and enforced in part for his benefit, but must either repudiate the contract as a whole or affirm it as a whole.

**3.  Contract—Payment in Specific Articles.**

Where an obligation is to pay in specific articles, the payment must be made strictly under the terms of the contract, or the liability becomes a money demand.

APPEAL from Franklin.  Tried below before Hon. J. M. TALBOT.

*S. P. Pounders* and *Crosby & Dinsmore,* for appellant.

*Todd & Glass,* for appellees.

FINLEY, CHIEF JUSTICE.—The appellant, T. B. Caldwell, brought this suit in the District Court of Franklin County, Texas, by his petition filed on the 10th day of March, 1897, against H. O. Dutton and John L. Rutherford, composing the firm of Dutton & Rutherford, the appellees. The plaintiff's cause of action set out in his petition was for goods amounting in value to the sum of $5804.66, sold and delivered by appellant to appellee about the 6th day of January, 1897, in the town of Hubbard City, Hill County, Texas.  The plaintiff pleads specially a contract of sale as follows, to wit:  That said goods sold were a stock of goods in a storehouse in Hubbard City, exposed for sale at retail; that plaintiffs sold to the defendants said stock of goods at the cost prices marked on said goods, to be invoiced at said marked cost, and delivered to the defendants in said Hubbard City; that the defendants agreed to pay plaintiff for said goods certain promissory notes of other persons secured by the vendor's lien on lands, at the stipulated valuation of $3600, and if the invoice of said goods should amount to more than $3600, that defendants should pay the excess over $3600 in cash; that if said goods by the invoice be made should amount to less than $3600, then the plaintiff agreed to pay the defendants in cash the difference between such invoice and $3600, the agreed valuation of the notes.

And plaintiff alleges that the invoice of said goods at said agreed price amounted to the sum of $5804.66; that the said goods were delivered to the defendants, and the defendants failed and refused to deliver to plaintiff the said notes, and to pay the plaintiff for said goods.

Plaintiff prays for judgment for the value of the goods.

On May 13, 1898, the defendants filed their first amended original

answer, consisting of general demurrer, general denial, and special answers as follows:

First. That the said sale was executory; that the said goods were to be shipped by plaintiff to defendants at Mt. Vernon, Texas, subject to inspection; that the plaintiff warranted said goods to be good, new, and salable, and guaranteed that said stock of goods would not invoice more than $3600; and defendants, relying upon said representations, warranties, and guaranty, made the trade. They allege a breach of said warranties; that defendants after receiving the said goods at Mt. Vernon discovered said defects and notified the plaintiff thereof, and offered to return the goods to the plaintiff, and that plaintiff refused to receive said goods; that the defendants continued to hold said goods and take care of them and sell them under protest; and allege a willingness to return now the goods on hand and account for that part sold. They also allege the delivery to plaintiff of a part of the notes which were to be accepted by him in part payment of the goods, amounting to $1200.

Second. That plaintiff represented that said goods were new and salable and that they would not invoice more than $4000, when he knew such representations were not true, and defendants thereby were induced to make said trade, whereby they allege that plaintiff is estopped from claiming a valuation of said goods above $4000.

Third. Defendants plead a partial failure of consideration.

Fourth. Defendants allege fraud by plaintiff in marking the goods and in making false representations as to the quantity and quality of the goods; allege warranty and a breach thereof; that the defendants in making the trade relied solely on plaintiff's representations; and allege that they tender in court the land notes which were to be paid by them upon said stock of goods.

On May 14, 1898, plaintiff filed his first supplemental petition, consisting of demurrer, exceptions, general denial, and a special answer, which is in substance as follows: That defendant bought the goods after examination and inspection, and they relied solely upon their knowledge of the condition and quantity and quality of the good derived from such examination and inspection; that defendants invoiced said goods and accepted them, and packed them and shipped them to their own address, and placed them in their business house in Mt. Vernon, Texas, and exposed them for sale; whereby plaintiff claims the defendants are estopped from complaining of the quantity, quality, or price of said goods.

On May 16, 1898, defendants filed their first supplemental answer, consisting of general demurrer and general denial and special answer, which is in substance as follows: That H. O. Dutton, one of the defendants, examined said goods, but he was inexperienced in that kind of business and could not judge the condition or quality of such goods, and relied wholly upon plaintiff's representations about the goods, and informed plaintiff that he so relied upon his representations; that the said goods by correct invoice at the cost prices marked thereon amounted

only to the sum of $5042.76; that the defendants received said goods at Mt. Vernon, Texas, placed them in their business house, and exposed them for sale before they knew the amount of the invoice and before they discovered a breach of plaintiff's warranty; that plaintiff having refused to receive said goods upon defendant's offer to return them to him, defendants continued to sell said goods and to keep them in their business house in order to protect themselves and plaintiff from loss as far as they were able.

The case was tried by the court without the aid of a jury, and no conclusions of fact and law were filed by the judge. The judgment entered is in substance as follows: The court finds that plaintiff, T. B. Caldwell, sold to defendant a stock of goods at marked cost, amounting to $5042.76; that he represented and warranted that said stock of goods was good, new, and salable; and the court finds that 25 per cent of the same was worthless, and that said stock of goods amounted, according to marked cost price, to $5042.76, less $1260.69, leaving $3782.07; that plaintiff has received in notes and appropriated $1140, and defendants tender in court $3600 in land notes of the value of $2460, and that plaintiff had agreed to accept same on his debt at the time of the original purchase; and that there is still due plaintiff the sum of $182.07, besides interest.

The court orders that the plaintiff take the said land notes for $3600 which are of the value of $2460, and the $1142 already used by him in satisfaction of his demands to the extent of $3600. And plaintiff is given judgment against defendants for $182.07, with interest at 6 per cent from January 6, 1897, and for all costs of suit, for which execution is ordered. And the clerk of the court is ordered to deliver to plaintiff the $3600 in land notes tendered in court by defendant. From this judgment plaintiff has appealed.

*Opinion.*—The first assignment of error presented urges that the court erred in finding, as recited in the judgment, that the plaintiff represented and warranted the goods sold to be good, new, and salable.

The evidence was conflicting on this point. The testimony of the defendants justified the findings, and the decision of the trial court upon the conflict we must treat as conclusive upon us.

The second assignment presented complains that the court failed to find that the plaintiff demanded of the defendant, after delivery of the goods, the notes agreed upon to be turned over to plaintiff in payment for the goods. The court was not requested to file conclusions of fact and law, and no special request was made that this fact should be found. There being no request for findings, we can not consider an assignment of error based upon the court's failure to find certain facts.

The third assignment of error presents the proposition that the court erred in requiring the plaintiff to accept the land notes tendered in court by the defendants in satisfaction of his demand to the extent of $2460, because the evidence shows that they were not tendered before suit, and said defendants did not offer to comply with the terms of the contract.

The evidence conclusively showed that the parties agreed to a sale of the goods at the cost prices marked upon them; that it was not certainly known how much this would amount to in the aggregate. It was agreed that certain vendor lien notes should be received in payment for the goods at the agreed value of $3600; and if the goods amounted to more than this sum the balance was to be paid by defendants in cash, and if they amounted to a less sum, the plaintiff was to pay the difference in cash to defendants. The goods were delivered to defendants, and after they were put in their store and exposed to sale they raised the objection that there were more goods than they intended to buy, that their quality was inferior to that represented, and that the marked prices had been changed and raised. The notes had already been delivered to plaintiff, but he returned the notes tendered in this suit for the purpose of having them indorsed, as they were made payable to order. He retained one note valued at $1140. When the defendants raised objections to the stock of goods, their quality, quantity, and price, the plaintiff refused to concede anything, and demanded that the notes be indorsed and turned over to him, and the difference between the invoice price of the goods and the $3600, agreed value of the notes, be paid to him. Defendants refused to do this. Plaintiff then demanded that the notes be turned over to him, and that the matters of difference between them be left for the determination of the courts. This was refused by defendants, and they would only agree to turn back the notes upon the adjustment of the whole matter. In this condition the matter remained, the defendants had the stock of goods and the plaintiff held the $1140 note, when plaintiff brought this suit for the value of the stock of goods. The defendants did not answer by affirming the contract and offering to carry out its terms, and seeking to recoup in damages for failure of the goods to come up to representations. They alleged fraud, breach of warranty, and asked a rescission. In other words, they held the goods and the notes, sought through the court to be relieved from the contract price, upon the ground of misrepresentation and fraud, and to pay only the real value of the goods. The question is, can they obtain this relief from the terms of the contract and then fall back upon the contract and satisfy their adjudicated liability with the vendor lien notes at their agreed value? Can the contract be set aside in part for fraud to relieve the defendants and enforced in part for their benefit?

A contract into which fraud enters is voidable at the election of the party defrauded. He can not, however, retain all the benefits of the contract and escape its obligations on account of the fraud. He must either repudiate the contract as a whole or affirm it as a whole. Young v. Dutton, 83 Texas, 497; Tiedeman on Sales, sec. 163.

Again, where the obligation is to pay in specific articles, not money, the payment must be made strictly under the terms of the contract or the liability becomes a money demand. Tiedeman on Sales, sec. 150; Brashear v. Davidson, 31 Texas, 191.

The court below found that the true invoice of the stock of goods at the

real marked cost price was $5042.76. He found that the goods were not worth that amount, and, on account of the false representation made as to their quality, adjudged the defendants liable only for $3782.07, and allowed a credit upon this sum for $1140, on account of the vendor lien note held and appropriated by the plaintiff, reducing the defendant's liability to $2642.07. In payment of this sum the plaintiff was required to take the $3600 vendor lien notes at a valuation of $2460, and was given a money judgment for the balance, $182.07. This was error; he should have had a money judgment for the entire $2641.67.

There is no other question raised for our consideration. The judgment will be reformed so as to give appellant a personal money judgment for the $2642.07, with 6 per cent interest from January 6, 1897, and the costs of appeal will be taxed against appellees.

*Reformed and affirmed.*